(755 P.2d 1344)

No. 60,415

HALLIBURTON COMPANY, *Appellant,* v. BOARD OF COUNTY COMMIS-
SIONERS FOR THE COUNTY OF JACKSON, CAROL BICKFORD, BOARD OF
COUNTY COMMISSIONERS FOR THE COUNTY OF NEMAHA, and MARY
ANN HOLSAPPLE, *Appellees.*

Petition for review denied July 8, 1988.

Opinion filed May 20, 1988.

*Ron D. Beal,* of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for appellant.

*Micheal A. Ireland,* county attorney, for appellees Board of Jackson County Commissioners and Carol Bickford.

*William C. O'Keefe,* county attorney, for appellees Board of Nemaha County Commissioners and Mary Ann Holsapple.

Before, DAVIS, P.J., BRAZIL, J., and MICHAEL J. MALONE, District Judge, assigned.

MALONE, J.: Halliburton Company (Halliburton) petitioned the district court for an order of mandamus compelling the registers of deeds for Jackson County, Kansas, and Nemaha County, Kansas, to file a mortgage on oil and gas leases located in those counties. The district court denied the petition and Halliburton appeals the decision.

The facts are not disputed. On April 23, 1986, Longhorn Resources, Inc., (Longhorn) executed a mortgage in favor of Halliburton, a foreign corporation authorized to do business in Kansas. The mortgage covered Longhorn's interest in oil and gas leases located in Jackson and Nemaha Counties and in Richardson County, Nebraska. The mortgage secured a principal amount

of $185,433.18 plus interest, as evidenced by a promissory note, and included the following provisions:

"WHEREAS, in order to secure the aforementioned indebtedness . . . and all extensions, renewals or substitutions thereof, together with all interest, charges and fees thereon, and also to secure the payment of any advances and charges made by MORTGAGEE hereunder to MORTGAGOR prior to or during the term of this Mortgage, *or any other loans, future advances, debts, obligations and liabilities of every kind and character of MORTGAGOR now or hereafter existing in favor of MORTGAGEE,* whether direct or indirect, primary or secondary, joint or several, fixed or contingent, the said MORTGAGOR has this day and does by these presents sell, convey, transfer, assign, set over and mortgage unto the MORTGAGEE, its successors or assigns the following: . . . .
. . . .

"As hereinabove provided, this Mortgage is intended to and shall secure any and all future indebtedness of the MORTGAGOR to MORTGAGEE, whether arising out of account, assignment or otherwise; provided, however, the lien of this mortgage for any such future indebtedness shall not exceed at any one time the sum of $5,000,000.00." (Emphasis added.)

Pursuant to K.S.A. 1987 Supp. 79-3102, Halliburton forwarded the mortgage with the registration fee for indebtedness of $185,433.18 to the register of deeds in Jackson County and the register of deeds in Nemaha County. The registers of deeds in both counties refused to file the mortgage, stating that under Kansas law the registration fee would need to be based on the five million dollar ceiling figure in the future advance clause contained in the mortgage. The mortgage, which was also re-corded in Nebraska, included the five million dollar figure because Nebraska law requires a stated limitation on future advances.

On June 16, 1986, Longhorn executed another mortgage in favor of Halliburton in an attempt to cure the objections of the registers of deeds. This second mortgage covered the same indebtedness of $185,433.18, but omitted the five million dollar limitation of future advances. However, Halliburton attempted to secure future indebtedness by including in this new mortgage the following language: "As hereinabove provided, this Mort-gage is intended to and shall secure any and all future indebt-edness of the MORTGAGOR to MORTGAGEE, whether arising out of account, assignment or otherwise." Halliburton forwarded this second mortgage with registration fees based on indebted-ness of $185,433.18 to the register of deeds in Jackson County

and the register of deeds in Nemaha County. Again the registers of deeds refused to file the mortgage unless Halliburton deleted the future advance clause of the mortgage or included a ceiling amount on future advances and paid the registration fee based on that maximum amount.

Halliburton filed a petition for mandamus in the District Court of Jackson County, Kansas, requesting an order directing the register of deeds of Jackson County and the register of deeds of Nemaha County to file the mortgage of April 23 or the mortgage of June 16, and to accept the registration fee on the principal amount of $185,433.18. Halliburton also requested attorney fees and costs of the action be assessed against the two counties.

The matter was tried by stipulation and the district court held that the registers of deeds acted properly in refusing to file either mortgage. Halliburton timely appeals those decisions.

Kansas law requires the register of deeds, upon request, to immediately file for record any written instrument affecting real estate, including oil and gas leases. K.S.A. 58-2221 provides in part:

"Every instrument in writing that conveys real estate, any estate or interest created by an oil and gas lease, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated. . . It shall be the duty of the register of deeds to file the same for record immediately."

In *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs,* 235 Kan. 958, 961, 685 P.2d 866 (1984), the court stated:

"The purpose of [K.S.A. 58-2221] is to provide a system of registration for instruments affecting the title to land. The record is kept to insure the title and its history may be preserved and protected. The statute makes readily available to the public notice of title to property or liens and adverse claims against property."

In addition, the register of deeds must collect a registration fee before a mortgage, including renewals and extensions, can be filed for record. K.S.A. 1987 Supp. 79-3102(a) provides:

"Before any mortgage of real property, or renewal or extension of such a mortgage, is received and filed for record, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated a

registration fee of $.25 for each $100 and major fraction thereof of the principal debt or obligation which is secured by such mortgage, and upon which no prior registration fee has been paid."

The mortgage registration fee is a tax. *Missouri Pacific Railroad Co. v. Deering,* 184 Kan. 283, 286, 336 P.2d 482 (1959). The tax is imposed upon the mortgagee, here Halliburton, who is interested in filing the mortgage. This is to insure that the cost of recording mortgages is not paid by the public, but by those who seek the protection that the public notice affords. *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs,* 235 Kan. at 961.

The mortgage registration fee is a revenue measure. *Potwin State Bank v. Ward,* 183 Kan. 475, 490, 327 P.2d 1091 (1958). If this were not the case, the statute would not assess a fee for each one hundred dollar increment of the mortgage, as a set fee to cover the costs of recording the mortgage (no matter the amount) would be more reasonable. When considering the *Misco Industries* and *Potwin State Bank* cases it is clear the purpose of the registration fee is to cover the costs of recording the mortgage and to generate revenue.

In the case before us, Halliburton is not seeking to avoid payment of a registration fee, but to have that fee based on the amount of original indebtedness secured by the mortgage. Halliburton contends that: (1) The registers of deeds should have recorded the April 23 mortgage and calculated the registration fee based on the $185,433.18 actual indebtedness at the time of the requested filing and not on the five million dollar maximum possible indebtedness included in the future advance clause of the mortgage; and (2) the registers of deeds should have recorded the June 16 mortgage and accepted the registration fee based on the $185,433.18 actual indebtedness without requiring Halliburton to delete the open-ended future advance clause of the mortgage. The issue before this court is whether K.S.A. 1987 Supp. 79-3102 requires a mortgage registration fee on undetermined amounts of money which may be loaned later in time as provided by a future advance clause of the mortgage.

A review of Kansas cases indicates two different types of future advance clauses are used in real estate mortgages. The first type is one that states a limit on the maximum amount of money that

can be advanced. This limit may or may not exceed the original amount of indebtedness at the time of the mortgage recording. See *Home State Bank v. Johnson,* 240 Kan. 417, 729 P.2d 1225 (1986); *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, 647 P.2d 1268 (1982); *Emporia State Bank & Trust Co. v. Mounkes,* 214 Kan. 178, 519 P.2d 618 (1974). This type of future advance clause is referred to as a close-ended advance clause. The second type is one that states no limit on the maximum amount of money that can be advanced. See *First Nat'l Bank in Wichita v. Fink,* 241 Kan. 321, 736 P.2d 909 (1987), *Potwin State Bank v. Ward,* 183 Kan. 475. This type of future advance clause is referred to as an open-ended advance clause.

Future advance clauses are clearly valid and enforceable in the State of Kansas and are addressed in our statutes dealing with real estate mortgages. K.S.A. 58-2336 provides:

"Every mortgage or other instrument securing a loan upon real estate and constituting a lien . . . upon the real estate securing such loan . . . may secure future advances and the lien of such mortgage shall attach upon its execution and have priority from time of recording as to all advances made thereunder until such mortgage is released of record: *Provided,* That the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage."

Appellate questions concerning the validity of a future advance clause usually arise in priority of lien cases. "[U]nder K.S.A. 58-2336, when advances are made pursuant to a future advance clause in a mortgage, the advances have priority over liens which attach after the recording of the mortgage but before the advances are made." *First Nat'l Bank in Wichita v. Fink,* 241 Kan. at 327. See *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. at 601; *Emporia State Bank & Trust Co. v. Mounkes,* 214 Kan. 178; *Potwin State Bank v. Ward,* 183 Kan. 475; *Fidelity Savings Ass'n v. Witt,* 8 Kan. App. 2d 640, 642, 665 P.2d 1108 (1983).

A comparison of two of these cases—one involving the use of a close-ended advance clause and the other an open-ended advance clause—is helpful in determining the issue before this court. In *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, the promissory note was for $47,000 and the mortgage contained a close-ended future advance clause "in amount not to exceed $400,000.00." The Supreme Court affirmed the trial court's

finding that the mortgage secured subsequent debt of $206,413.91. In its decision, the Supreme Court stated "that mortgages given to secure future advances have long been held to be valid and enforceable in Kansas." 231 Kan. at 600. The court further held:

"Subsequent debts may be secured under the [future advance] clause of a real estate mortgage in either of two ways: (1) by specifically stating on the face of the new note that it is secured by the prior mortgage; or (2) by showing that the subsequent debt is of the same kind or character as, or part of the same transaction or series of transactions with, that originally secured by the mortgage." 231 Kan. 595, Syl. ¶ 1.

In *First Nat'l Bank in Wichita v. Fink*, 241 Kan. 321, the promissory note was for $24,506.39 plus interest and contained an open-ended future advance clause which provided:

"That this mortgage secures the payment of any and all existing and future notes, loans, advances and any renewal or renewals of note/s and each and all of the payments and obligations thereunder, even though the indebtedness of Mortgagors to Mortgagee from time to time be reduced below the maximum amount above stated or be paid in full and if Mortgagee shall thereafter make loans or advances to Mortgagors, such loans or advances thereafter made shall nevertheless be secured by this mortgage until this mortgage is released of record." 241 Kan. at 322.

After this mortgage was recorded, the mortgagor executed a second mortgage on the same real estate in favor of another mortgagee. After this second mortgage was recorded, future advances were made on the first mortgage, each documented by a mortgage and note listing the first mortgage as collateral. (Also, it should be noted that the mortgagor had paid all but $9,152 plus interest on the first mortgage.) The Supreme Court held that under K.S.A. 58-2336, when advances are made pursuant to a future advance clause in a mortgage, the advances have priority over liens which attach after the recording of the mortgage but before the advances are made; however, the priority is limited to the principal sum of the first mortgage, $24,506.39. The second mortgage lien is prior to any sums owing the first mortgagee in excess of that amount. 241 Kan. at 327.

The close-ended clause in *Lygrisse* is similar to the future advance clause in the April 23 mortgage filed by Halliburton. In the present case, the district court held that mortgage registration fees "are computed on the total amount' which is secured by a

mortgage." The trial judge found that the secured amount was the five million dollar maximum lien authorized in the future advance clause of the April 23 mortgage.

K.S.A. 1987 Supp. 79-3102(a) states, in part, the registration fee shall be based on the "principal debt or obligation which is secured by such mortgage." *Lygrisse* makes it clear that the indebtedness up to the maximum limitation specified in the future advance clause of the mortgage is secured. Since future advances are secured, we conclude K.S.A. 1987 Supp. 79-3102 requires the registration fee be based on the maximum amount of possible secured indebtedness at the time of the registration as stated in the close-ended future advance clause of the mortgage.

In the present case, the registers of deeds were correct in refusing to record the April 23 mortgage with a registration based only on the original indebtedness of $185,433.18. The registration fee is to be based on the maximum secured amount of the future advance clause, five million dollars.

The open-ended clause in the *Fink* case is similar to the future advance clause in the June 16 mortgage filed by Halliburton. The trial judge here, in deciding the June 16 mortgage could not be filed, said, "[T]he total amount secured was not stated and, therefore, the mortgage registration fee could not be computed. Computation and payment of mortgage registration fees are prerequisite to filing and, therefore, filing could not and cannot be perfected in the second instance."

The payment of a mortgage registration fee is a revenue measure, not a recording measure. The payment of the fee does not give notice, constructive or otherwise, and has no bearing on the question of future advances. *Potwin State Bank v. Ward,* 183 Kan. at 490. A tax statute will not be extended by implication beyond the clear import of its language, and the operation of the statute will not be enlarged to include matters not specifically embraced. If there is reasonable doubt as to the meaning of a tax act, it will be construed in favor of the taxpayer. *National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs,* 228 Kan. 595, 597, 618 P.2d 1176 (1980); *Fleming Company v. McDonald,* 212 Kan. 11, Syl. ¶ 1, 509 P.2d 1162 (1973); *Grauer v. Director of Revenue,* 193 Kan. 605, Syl. ¶ 3, 396 P.2d 260 (1964); *Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, 114 P.2d 871 (1941).

K.S.A. 1987 Supp. 79-3102(a) requires the mortgagee to pay a tax before a mortgage, or a renewal or extension of the mortgage, "is received and filed" by the register of deeds, but there is nothing in the language of the statute that indicates a mortgage registration fee is to be assessed on open-ended future advances contemplated but not specified by the mortgage. Since a tax statute will not be extended beyond the clear meaning of its language, we conclude K.S.A. 1987 Supp. 79-3102(a) does not impose a mortgage registration fee on future advances made pursuant to an open-ended advance clause, unless and until those advances are actually made and the mortgage refiled with the register of deeds.

The *Fink* and *Potwin State Bank* cases leave no doubt that open-ended future advance clauses are valid and enforceable in our state. Since the amount on an open-ended future advance is unknown at the time of recording, there can be no registration fee assessed against it at the time of the recording of the original mortgage. In the present case, the registers of deeds were required to record the June 16 mortgage and accept the registration fee based on the principal amount of $185,433.18. However, under the holding in *Fink*, additional advances made under the open-ended future advance clause would have priority over other liens based on the June 16 recording date only to the maximum amount stated in the mortgage, as provided by K.S.A. 58-2336, or $185,433.18.

Plaintiff also requests attorney fees. K.S.A. 60-802(c) allows the recovery of attorney fees in mandamus actions when the refusal of the public official to perform a duty imposed by law was unreasonable under the facts and circumstances of the case. *Cities Serv. Oil Co. v. Board of County Comm'rs*, 224 Kan. 183, 189, 578 P.2d 718 (1978); *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 512, 438 P.2d 732 (1968). Attorney fees are also allowed in civil actions under K.S.A. 60-2007(b) when claims or defenses are made "without a reasonable basis and not in good faith."

In this case, plaintiff initially requested the registers of deeds to file mortgages without the proper registration fees. When plaintiff petitioned the district court for an order of mandamus, it

sought an order compelling the registers of deeds to record either the April 23 mortgage or the June 16 mortgage. The district court upheld the refusals. Under the facts and circumstances of this case, we cannot say the actions of the registers of deeds were unreasonable or in bad faith.

For the reasons set forth in this opinion, we find the registers of deeds for Jackson and Nemaha Counties correctly refused to file the April 23 mortgage with a stated maximum limit on future advances without receiving the registration fee based on the maximum amount of possible indebtedness. We affirm the trial court's decision in this regard.

We further find the registers of deeds were required to file the June 16 mortgage with the open-ended future advance clause and accept the registration fee based on the $185,433.13 actual indebtedness at the time of the recording. We reverse the trial court's holding to the contrary.

The judgment of the district court is affirmed in part and reversed in part. This case is remanded to the district court with directions to issue an order of mandamus requiring the defendant registers of deeds to file the June 16 mortgage and accept the registration fee based on the original indebtedness. Plaintiff's request for attorney fees is denied.